174 P.3d 885

STATE of Idaho, Plaintiff–Respondent,

v.

Shyrline Rae KEENE, Defendant–Appellant.

No. 32504.

Court of Appeals of Idaho.

Aug. 16, 2007.

Review Denied Nov. 1, 2007.

Molly J. Huskey, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

GUTIERREZ, Judge.

Shyrline Rae Keene appeals from her judgment of conviction for possession of a controlled substance. Keene challenges the district court's denial of her suppression motion, arguing that the district court erred in determining that the investigative detention was reasonable. For the reasons set forth below, we affirm.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

The district court's memorandum decision states in relevant part:

On the evening of August 17, 2004, Cpl. Leon Cazier of the Heyburn police department was dispatched to an R.V. park in the city of Heyburn in response to a call from the R.V. park host. When Cpl. Cazier arrived at the R.V. park he saw a brown Mercury Grand Marquis leaving the park. He noticed that there were two occupants in the car but he did not observe any other identifying information. The park host reported that he suspected that the occupants of the car might have been selling drugs in or near the R.V. park restrooms. He said he had observed the same car coming and going while other cars came up to it and then left. He reported that he had seen the same car over a period of weeks and that someone from the car would go in and out of the restroom but only be there for a short time.... The following night, August 18, 2005,(sic) at about 10:30 p.m. Cpl. Cazier was dispatched to Primrose Lane in Heyburn in response to a report of a car parked in front of an unoccupied house.... When the officer arrived he saw that it was the same car he had seen at the R.V. park the night before. There were two occupants but he could not, with certainty, identify them from the previous night. The officer waited down the street from the vehicle and he called narcotics officers for assistance. Before the narcotics officers arrived, Cpl. Cazier pulled his police car to the rear of the suspect vehicle. He did not turn on his emergency lights or his flashers but he did have his headlights on. A male, later identified as Frank Saldana, exited the vehicle from the passenger side. He told Cpl. Cazier that he had come to visit a relative who lived in the unoccupied house. He admitted that he had been at the R.V. park the night before. At about this time, the defendant exited the car from the driver's side and walked towards the officer. In response to her questions, Cpl. Cazier explained to her that he was investigating why they were there. He also made reference to his suspicion that drugs might be involved. In response to the officer's questioning, the defendant gave the officer her name and date of birth. She then walked back to her car and locked the doors and left the scene on foot, walking west on Primrose lane. At about this time, the narcotics officers arrived. They asked Cpl. Cazier if he was "done" with the defendant. Cpl. Cazier said that he was not. The narcotics officers ran after the defendant who resisted.... [T]he officers ultimately put handcuffs on the defendant on the front porch of a nearby house and took her back to the scene of the initial encounter.... The officers then called for a drug detection dog. The dog arrived about 10 minutes after the defendant was handcuffed by the narcotics officers. The dog indicated on the car and a search revealed methamphetamine and paraphernalia....

The state charged Keene with possession of methamphetamine, possession of drug paraphernalia, and driving without privileges.

Keene moved to suppress all evidence gathered subsequent to the initial investigatory stop. After a hearing, the district court denied the motion, determining that Keene's detention occurred when she was handcuffed and returned to the scene of the encounter; that Keene's investigative detention was supported by reasonable suspicion that she had been or was about to be engaged in illegal activity and that the detention was reasonable in scope and duration. Keene entered a conditional plea of guilty to possession of a controlled substance, I.C. § 37–2732(c)(1). Keene now appeals.

## II.

### DISCUSSION

Keene contends that her detention became a *de facto* arrest when she was handcuffed, and was not supported by probable cause or reasonable suspicion that she was involved in criminal activity. The state argues that even if the district court's reasoning was flawed, we must affirm because Keene showed no causal link between her detention and the discovery of evidence pursuant to the drug dog alert.

■ We begin by noting that there was no detention until the narcotics officers ran after Keene and stopped her. The Fourth Amendment to the United States Constitution, and its counterpart, Article I, Section 17 of the Idaho Constitution, guarantee the right of every citizen to be free from unreasonable searches and seizures. However, not all encounters between the police and citizens involve the seizure of a person. *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889, 904 (1968); *State v. Jordan*, 122 Idaho 771, 772, 839 P.2d 38, 39 (Ct.App.1992). Only when an officer, by means of physical force or show of authority, restrains the liberty of a citizen may a court conclude that a seizure has occurred. *State v. Fry*, 122 Idaho 100, 102, 831 P.2d 942, 944 (Ct.App.1991). A seizure does not occur simply because a police officer approaches an individual on the street or other public place, asks if the individual is willing to answer some questions or puts forth questions if the individual is willing to listen. *Florida v.*

*Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389, 398 (1991); *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1323, 75 L.Ed.2d 229, 235 (1983). Unless and until there is a detention, there is no seizure within the meaning of the Fourth Amendment and no constitutional rights have been infringed. *Royer*, 460 U.S. at 498, 103 S.Ct. at 1324, 75 L.Ed.2d at 236.

■ When Officer Cazier pulled his vehicle behind the brown Mercury Grand Marquis, he did not use his emergency lights or any other means for communicating to a reasonable person that he or she was not at liberty to ignore the police presence and go about his or her business. The officer was alone at this time and did nothing to block Keene from simply driving away. Thus, Saldana and Keene approached the officer of their own free will, and the officer's questioning did nothing to change the consensual nature of the police-citizen encounter. Keene's decision then to walk away is further evidence that the initial contact did not rise to the level of a seizure.

■ Assuming *arguendo* that the detention that then occurred amounted to an arrest without probable cause, this illegality would require suppression of the drugs found in the car only if there was a causal connection between the unlawful arrest and the discovery of the drugs. In *State v. McBaine*, 144 Idaho 130, 157 P.3d 1101 (Ct.App.2007), we noted that the United States Supreme Court has instructed that suppression of evidence under the exclusionary rule is appropriate only where the challenged evidence is *in some sense*, whether direct or indirect, the product of illegal governmental activity. *See Segura v. United States*, 468 U.S. 796, 804, 815, 104 S.Ct. 3380, 3385, 3390, 82 L.Ed.2d 599, 608, 615 (1984). Thus, where a defendant moves to suppress evidence allegedly gained through unconstitutional police conduct, the defendant bears an initial burden of going forward with evidence to show a factual nexus between the illegality and the state's acquisition of the evidence. *Alderman v. United States*, 394 U.S. 165, 183, 89 S.Ct. 961, 972, 22 L.Ed.2d 176, 192 (1969). "[T]he defendant need only show that, on the events that did take place, the discovery of the

evidence was a product or result of the unlawful police conduct." *McBaine,* 144 Idaho at 134, 157 P.3d at 1105. Subsequently, the state bears the ultimate burden of persuasion to prove that the challenged evidence is untainted. *Id.* at 133, 157 P.3d at 1104.

Here, Keene has not met her initial burden of showing a factual nexus between her detention and the discovery of drugs in her vehicle. The police did not gain any information from arresting Keene that caused them to search the vehicle, and because Keene had already walked away from the vehicle before she was seized, we see no way that the canine sniff and ensuing search resulted from an exploitation of the allegedly illegal arrest.

Ultimately, the police had justification to detain and search the vehicle that was totally independent of their contact with Keene. During the initial consensual encounter, Saldana told the officer that he had been at the R.V. park the night before. That was the night Officer Cazier had seen two people in a brown Mercury Grand Marquis leave the R.V. park and had heard the R.V. park host describe possible drug activity involving other persons visiting the Grand Marquis over a period of weeks. This individualized, specific information amounted to reasonable suspicion that Saldana was engaged in the illicit drug trade and that the car had recently been used to transport drugs.

An investigative detention is permissible if it is based upon specific articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *State v. Sheldon,* 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct.App.2003). Such a detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *State v. Roe,* 140 Idaho 176, 181, 90 P.3d 926, 931(Ct.App.2004); *State v. Gutierrez,* 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct.App. 2002). Where a person is detained, the scope of detention must be carefully tailored to its underlying justification. *Roe,* 140 Idaho at 181, 90 P.3d at 931; *State v. Parkinson,* 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct.App.

2000). The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. *Roe,* 140 Idaho at 181, 90 P.3d at 931; *Parkinson,* 135 Idaho at 361, 17 P.3d at 305.

The scope of reasonable suspicion to detain Saldana included seizure of the associated brown Mercury Grand Marquis. *See United States v. Place,* 462 U.S. 696, 706, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110, 120 (1983) (holding police may temporarily seize an item based on reasonable suspicion it contains contraband). Had Keene attempted to drive away rather than abandon her vehicle, the officer could have lawfully prevented her from doing so. The individualized facts connecting Saldana and the brown Mercury Grand Marquis to the events at the R.V. park on August 17 and 18, 2004, provided reasonable suspicion to seize that vehicle. *See United States v. Burton,* 288 F.3d 91, 99–102 (3rd Cir.2002) (similar facts and result).

Lastly, the fifteen minutes between the consensual encounter with Saldana and the drug dog sniff did not exceed the time necessary to effectuate the purpose of the stop. *See State v. Brumfield,* 136 Idaho 913, 917, 42 P.3d 706, 710 (Ct.App.2001) (approving forty-nine minute detention while officers awaited arrival of drug dog). Keene does not dispute that once the drug dog alerted on the vehicle, the officers possessed probable cause that justified a search of the interior. *See State v. Tucker,* 132 Idaho 841, 843, 979 P.2d 1199, 1201 (1999) (probable cause arises as soon as a drug detection dog alerts on the exterior of a vehicle, justifying a search of the vehicle without the necessity of obtaining a warrant); *State v. Gallegos,* 120 Idaho 894, 898, 821 P.2d 949, 953 (1991) (same); *State v. Gibson,* 141 Idaho 277, 281, 108 P.3d 424, 428 (Ct.App.2005) (same).

### III.

### CONCLUSION

The district court did not err in denying Keene's motion to suppress because her allegedly illegal detention bore no factual nexus to the vehicle search and because there was an independent basis for reasonable suspicion to seize the vehicle. Keene's judg-

ment of conviction for possession of a controlled substance is affirmed.

Chief Judge PERRY and Judge LANSING concur.