**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 40197**

| | | |
|---|---|---|
| **CHRISTOPHER CONLEY TAPP,** | ) | **2013 Unpublished Opinion No. 761** |
| | ) | |
| Petitioner-Appellant, | ) | **Filed: November 21, 2013** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **STATE OF IDAHO,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| Respondent. | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County.  Hon. Joel E. Tingey, District Judge.

Judgment summarily dismissing post-conviction action, <u>affirmed</u>.  Post-judgment order denying request for DNA testing, <u>affirmed without prejudice</u>.

Nevin, Benjamin, McKay & Bartlett, LLP, Boise, for appellant.  Dennis A. Benjamin argued.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.  Jessica M. Lorello argued.

---

LANSING, Judge

In his second appeal in this post-conviction case, Christopher Conley Tapp challenges the district court's summary dismissal of his claim that his defense counsel provided ineffective assistance by failing to present evidence of his diminished mental capacity in support of his trial motion to suppress his confession as involuntary.  Tapp contends that because this Court, in his prior post-conviction appeal, reversed the summary dismissal of this claim and directed the district court to conduct an evidentiary hearing, the doctrine of law of the case precluded dismissal of the claim on the State's renewed motion for summary dismissal on a different ground.  In the alternative, Tapp contends that summary dismissal of the claim was erroneous on the merits.  Tapp further contends that the district court erred by denying his Idaho Code § 19-4902 petition for DNA testing.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

The pertinent background facts were summarized in this Court's opinion on Tapp's appeal from his judgment of conviction, *State v. Tapp*, 136 Idaho 354, 33 P.3d 828 (Ct. App. 2001) ("*Tapp I*"), as follows:

> Early in the morning of June 13, 1996, Angie Dodge was raped and stabbed to death in her apartment in Idaho Falls. On January 7, 1997, twenty-year-old Christopher Tapp voluntarily submitted to police questioning about this crime at the Law Enforcement Building (LEB) in Idaho Falls. Tapp again voluntarily went to the LEB for questioning on January 10. After this interview, Tapp's parents retained private counsel for their son. When Tapp did not appear at the LEB for another scheduled interview on January 11, police officers went to his home to find him. They were informed by Tapp's mother that an attorney had been retained and that Tapp would appear on January 13, with counsel, to answer more questions. Approximately an hour later, the Idaho Falls chief of police arrived at the Tapp home and attempted to convince Tapp's mother to change her mind about her son's refusal to be interviewed without assistance of counsel. She refused. Rather than waiting for a voluntary interview on January 13, law enforcement officials obtained a warrant to arrest Tapp on a charge of accessory to a felony, Idaho Code §§ 18-205, -206, and he was arrested on January 11.
>
> After making the arrest, an officer put Tapp in an interview room and called Tapp's attorney. Before the attorney's arrival, the officer initiated a discussion with Tapp about the type of information the police wanted to obtain from him.[1] On January 13, another attorney joined in Tapp's representation as co-counsel. Thereafter, Tapp was interviewed, while under arrest and in police custody, on January 15 and 17. During all interviews at the LEB from January 15 forward, Tapp was separated from his attorneys. The attorneys were placed in a nearby office in the LEB where they were allowed to observe the interviews on a closed-circuit television. Tapp's only contact with his attorneys was during breaks in the interviews. His attorneys apparently made no objection to this arrangement.
>
> ---
> [1] Tapp's statements made during this interview before the arrival of his counsel were later suppressed by the district court and are not at issue in this appeal.

2

In the first few interviews Tapp denied having any knowledge of the crime, then claimed that Ben Hobbs had confessed to killing Dodge and had asked Tapp to help him with an alibi. Tapp denied having ever been at the crime scene. By January 15 and 17, however, Tapp's story was changing, and he admitted that he had accompanied Hobbs to Dodge's apartment on the night of the murder. Tapp told police that Hobbs wanted to confront Dodge because Hobbs believed that she had convinced Hobbs's wife to leave him. Tapp claimed that Hobbs and Dodge started fighting and that Hobbs punched Dodge and then stabbed her twice. Tapp asserted that he ran from the apartment at that point. He admitted that he returned later and found Dodge dead and no one else present. Tapp also implicated a man named Jeremy Sargis in the crime. Tapp said he believed that the murder weapon belonged to Sargis, but he initially claimed that Sargis was not in the apartment that night. Eventually, however, Tapp accused Sargis of helping to rape and murder Dodge.

On January 15, Tapp and the State entered into a "limited use immunity" agreement, and on January 17 they entered into a "cooperation and settlement agreement." These agreements (hereinafter referred to collectively as the "immunity agreements") required Tapp to cooperate with the police investigation of Dodge's death and to provide the police with truthful information about the crime. Tapp also agreed to plead guilty to aiding and abetting an aggravated battery, a felony, I.C. §§ 18-903, -907, and the State agreed not to file any other charge against Tapp related to Dodge's death. The State also promised to recommend at the sentencing hearing that the district court retain jurisdiction for a limited period pursuant to I.C. § 19-2601(4), and to allow withdrawal of the guilty plea if the judge did not follow the recommendation. The State also agreed not to use any of Tapp's statements against him except for impeachment purposes. As a consequence of the immunity agreements, the pending charge against Tapp for accessory to a felony was dismissed on January 17 and he was released from custody.

Tapp was again questioned on January 18 and 29. Before the January 29 interview began, the prosecutor informed Tapp and his attorney that the prosecutor considered the immunity agreements with Tapp to be void because Tapp had not been truthful in describing the crime. The prosecutor explained that Tapp's contention that Hobbs and Sargis were the rapists was contradicted by DNA tests showing that semen found on Dodge's body and clothing did not come from either of those men (or from Tapp). Despite this declaration from the prosecutor, Tapp and one of his attorneys continued with the January 29 interview. On that date, Tapp was given a polygraph test, during which he asked to be taken to the apartment where the murder occurred. Tapp's attorney agreed that the police could take Tapp to the crime scene for further questioning, but the attorney declined to accompany Tapp and the officers. Once at the crime scene, Tapp made statements implicating himself in the crimes. At the crime scene and later the same day at the LEB, Tapp admitted that he had held Dodge's arms and shoulders down throughout the rape and stabbing. In his new account of the events, Jeremy Sargis was replaced by a different male whose name Tapp could

3

not remember. Some details of his story about how Dodge was raped and details of other events of that night changed during this and two subsequent interviews.

Tapp was rearrested after the January 29 interview. The next day, he was again charged with being an accessory to a felony. Tapp was further interviewed on January 30 and 31. On February 3, 1997, charges of rape, I.C. § 18-6101(3), (4), and first degree murder, I.C. §§ 18-4001, -4002, -4003(a), replaced the accessory charge.

*Tapp I*, 136 Idaho at 357-58, 33 P.3d at 831-32. Tapp was found guilty by a jury. *Id*. at 358, 33 P.3d at 832.

On appeal, this Court held that the January 15, 17, 30, and 31 interviews were conducted in violation of Tapp's right to counsel and should have been suppressed. *Id*. at 362, 33 P.3d at 836. However, we held that the statements made on January 7, 10, 18, and 29 were not subject to suppression, upholding the district court's finding that the statements were not shown to be involuntary and that Tapp's *Miranda*[1] rights were not violated on January 29 because he was not in custody when the statements were made. *Id.* at 362-65, 33 P.3d at 836-39. We concluded that the error in admission of Tapp's January 15, 17, 30, and 31 statements was harmless in light of Tapp's detailed confession on January 29. We explained:

> In the present case, we have held that Tapp's statements made on January 29 in response to police questioning were properly admitted. Because these statements included explicit and highly incriminating confessions, we conclude that the erroneous admission of other confessions made on other dates was harmless. On January 29, while in Dodge's apartment, Tapp admitted that he helped restrain Dodge when she was being raped and when Hobbs cut her throat. After Tapp and the officers returned to the LEB on the same day, Tapp admitted that he held Dodge's arms down while she was being raped and forced to engage in fellatio. He also confessed that he was holding Dodge's arms when Hobbs stabbed her in the chest which, according to Tapp, was the first time she was stabbed. He claimed to have released her arms and stood up immediately when that happened, implying no further participation. However, later in the same interview he admitted that he was also holding Dodge's arms when the unidentified participant stabbed her. Thus, in his conversations with police on January 29, Tapp admitted to having helped restrain Dodge while she was sexually attacked, while Hobbs inflicted the initial stab wound to the chest, while the unidentified participant again stabbed her in the chest, and while Hobbs cut her throat. We are confident beyond a reasonable doubt that if these detailed confessions made on January 29 had been the only statements from Tapp heard by

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

4

the jury, the verdict would have been the same. Therefore, the judgment of conviction will not be disturbed.

*Id*. at 365-66, 33 P.3d at 839-40.

Tapp thereafter filed a petition for post-conviction relief. In one of the claims (the only claim that is at issue in this appeal), Tapp alleged that his trial counsel's performance was deficient with respect to the motion to suppress his January 29 confession. Tapp contended that his defense counsel failed to present evidence of Tapp's alleged diminished mental capacity at the suppression hearing to support Tapp's position that his confession was involuntary. The State moved for summary dismissal of Tapp's petition, and in 2008, the district court granted the State's motion.

Tapp appealed to this Court. In our opinion in that appeal, we described Tapp's diminished mental capacity evidence as follows:

> In support of his ineffective assistance of counsel claim, Tapp has submitted additional evidence regarding his mental capacity which he claims trial counsel should have presented in the motion to suppress. Tapp provided report cards showing poor performance, scores in the lowermost percentiles from the Iowa Tests of Basic Skills, and reports indicating Tapp attended special education classes. Tapp also submitted the affidavit of his associate trial counsel who indicated that she had learned from Tapp that he had attended special education classes and had been evaluated by a mental health professional. She stated that Tapp told her that lead trial counsel had not asked about this information.
>
> Tapp also submitted an affidavit from Dr. Corgiat, a psychologist. Dr. Corgiat stated that he was retained by defense counsel in 1997, and was provided records in apparent contemplation of examining Tapp. It does not appear from his affidavit that he examined Tapp or was ultimately asked to do anything at that time. In his affidavit, he stated that he retained the records previously provided and upon reviewing them, noted a history of resource room assistance, possible AD/HD and other cognitive difficulties, as well as a history of psychotherapy/counseling, and chemical dependency treatment. Dr. Corgiat noted that the records suggested prominent nonverbal learning disability characteristics, including deficits in executive function abilities consistent with poor planning, impulsivity, poor judgment, and an inability to benefit from consequence-based paradigms. Dr. Corgiat stated that, based upon the records, there was reason to obtain a competency evaluation. Dr. Corgiat also stated:
>
>> It is my opinion that the mental health issues contained in Mr. Tapp's file would raise serious questions about the validity of any "confessions" made to police in relation to the rape and murder of Angie Dodge. I believe that his Nonverbal Learning Disability coupled with the ongoing interrogations that he

5

underwent may have rendered him susceptible to the interrogation process.

Tapp avers that his trial counsel knew of Dr. Corgiat's opinion, but did not discuss its use with him at trial or sentencing. Tapp's affidavit submitted in support of post-conviction relief, stated that he suffered many psychological problems, for which he received counseling and was medicated from age 10. He contends that had trial counsel investigated, his mental illness would have been revealed. In the addendum, Tapp's recitation of the events of January 29 referred to the length of time he spent waiting in the interrogation room and to having been "tired, scared and hungry."

*Tapp v. State*, Docket No. 35536 (Ct. App. March 31, 2010) (unpublished) "*Tapp II.*"

In *Tapp II* we reversed the summary dismissal of Tapp's post-conviction claim. We said:

[T]he post-conviction court dismissed the claim on the ground that this Court's determination in the direct appeal precluded his re-litigating the issue and was the law of the case. We again disagree to the extent that Tapp's post-conviction claim is, essentially, that because counsel failed to present information regarding his diminished mental capacity, neither the trial court nor this Court on review possessed the facts necessary to make the determination as to the voluntariness of his confession. Tapp has attempted to submit additional facts, which he contends counsel should have presented at the suppression hearing, which would have demonstrated his diminished mental capacity and its bearing on the voluntariness of his statements. The district court, apparently due to its determination that Tapp could not re-litigate the issue, did not consider any potential effect that the alleged additional facts would have on the question of voluntariness. Instead, the district court stated that the trial court would have considered mental state as a component of the analysis of whether the statements were involuntary and coerced and, again, noted both the trial court and this Court's prior analysis and recitation of the evidence relative to mental condition and police coercion.

Tapp argues that, if the facts alleged in the affidavits and addendum are considered in the light most favorable to him, the district court should have granted him an opportunity to present such testimony at an evidentiary hearing in order to show diminished mental capacity and its effect on whether the confession was voluntary. The State contests Tapp's proposed evidence. However, again, the district court determined that this Court's prior opinion was the law of the case and did not consider the alleged additional evidence. Since the district court did not consider the alleged additional facts in granting summary dismissal, we remand for the district court to do so.

After addressing other issues raised in the appeal, in the conclusion of the opinion, we stated that "the district court's summary dismissal is reversed and remanded for an evidentiary hearing on whether Tapp's trial counsel was ineffective during the suppression hearing . . . ."

6

On remand, the State again filed a motion for summary dismissal of this claim on the grounds that (1) a confession is not subject to suppression for involuntariness absent some evidence of police coercion and (2) even assuming all of Tapp's newly submitted diminished mental capacity evidence to be true, the video recordings of Tapp's numerous interrogations showed that his alleged mental infirmity was not of such significance as to conclude, in the totality of the circumstances, that the January 29 confession was involuntary. Tapp responded that summary dismissal proceedings were precluded because this Court, in *Tapp II*, had directed the district court to conduct an evidentiary hearing on the claim. The district court determined that this Court's opinion did not mandate an evidentiary hearing, and then granted the State's motion for summary dismissal of the claim.

Tapp appealed from the subsequently entered judgment dismissing his post-conviction action. Three days after filing the notice of appeal, Tapp filed in the district court in this case a petition for further DNA testing of semen recovered from the crime scene pursuant to I.C. § 19-4902. The State filed a response stating that it did not object to the request for further DNA testing, but it requested that a specific laboratory in Texas do the testing. While this appeal was pending, the district court denied Tapp's petition on the merits. Tapp also appeals from that order.

## II.

## ANALYSIS

### A.     Law of the Case, Waiver and Idaho Appellate Rule 38

Tapp first contends that because this Court, in his prior post-conviction appeal, reversed the summary dismissal of this claim and directed the district court to conduct an evidentiary hearing, the doctrine of law of the case precluded disposition of the claim on the State's new motion for summary dismissal on remand. The district court, noting a conflict in language in this Court's opinion, determined that summary disposition was not precluded. For the following reasons, we conclude that the district court did not err.

As noted above, in the conclusion of our opinion in *Tapp II*, we stated: "The district court's summary dismissal is reversed and remanded for an evidentiary hearing on whether Tapp's trial counsel was ineffective during the suppression hearing for . . . failing to present evidence of Tapp's diminished mental capacity to show the confession was involuntary." Tapp contends that this pronouncement that we were remanding "for an evidentiary hearing" became

7

the law of the case, which the district court was required to adhere to on remand. He also argues that the State waived any claim that the trial court had the authority to entertain a new motion for summary dismissal by failing to argue against his requested remedy in the first appeal and by failing to file a petition for review or rehearing to modify the directive at the conclusion of the opinion. Tapp maintains that Idaho Appellate Rule 38 required the district court to comply with the directive of this Court's opinion.

As applicable here, the law of the case doctrine provides that "upon an appeal, the Supreme Court, in deciding a case presented states in its opinion a principle or rule of law necessary to the decision, such pronouncement becomes the law of the case, and must be adhered to throughout its subsequent progress, both in the trial court and upon subsequent appeal." *Stuart v. State*, 136 Idaho 490, 495, 36 P.3d 1278, 1283 (2001).

In rejecting Tapp's law of the case argument in the proceedings below, the district court stated:

> In this case, there has been no finding that Tapp has presented a prima facie case or that there is a genuine dispute as to material issues of fact. Understandably, no such conclusion was reached in the opinion of the Court of Appeals. Accordingly, this Court finds that it is not precluded from considering the pending motion for summary dismissal.
> It is perhaps worth noting that the Court of Appeals' reference to an evidentiary hearing is logical inasmuch as an evidentiary hearing would likely have been the next step following the remittitur, but for the subsequent filing of a renewed motion to summary dismissal. In any event, this Court does not read the Opinion in *Tapp II* as requiring an evidentiary hearing to the exclusion of further consideration of a renewed motion for summary dismissal.

We conclude that the district court was correct. In a recent decision, *State v. Hawkins*, 155 Idaho 69, 305 P.3d 513 (2013) ("*Hawkins II*"), the Idaho Supreme Court rejected a contention similar to that presented here by Tapp. The Court there addressed the effect of language in this Court's prior decision in *State v. Hawkins*, 148 Idaho 774, 782-83, 229 P.3d 379, 387-88 (Ct. App. 2009) ("*Hawkins I*"). We had determined in *Hawkins I* that because of Hawkins' bizarre notions demonstrated before the trial and equally strange and deluded testimony during the trial, the district court erred by not ordering a mental health evaluation to determine whether Hawkins was competent to represent himself at trial. At the end of our opinion we stated: "Because it is not possible to retroactively make a determination as to Hawkins' competency at the time he was tried, we must vacate the judgment of conviction and

leave the state free to retry Hawkins if he is found to be competent to stand trial." *Hawkins I*, 148 Idaho at 783, 229 P.3d at 388. The proceedings that followed on remand are described in *Hawkins II*:

> [T]he district court ordered Hawkins to undergo a competency evaluation pursuant to I.C. §§ 18-211 and 18-212. Licensed psychologist Dr. Chad Sombke and licensed psychiatrist Dr. Michael Estess evaluated Hawkins and testified that based on their interactions with him, his responses to testing, and information regarding his social and institutional history, Hawkins was competent to stand trial. Dr. Estess was a consulting psychiatrist for the Ada County Jail and had a clinic there with three masters-level social workers on staff throughout the two-year period Hawkins was incarcerated at the Ada County Jail. Dr. Estess testified that he interacted with Hawkins individually during this time period on several occasions and also spoke often with social workers and jail staff who had more frequent contact with him. Between 2006 and 2008, neither he nor his staff believed that Hawkins suffered from any mental illness. Dr. Estess testified at Hawkins's 2010 competency hearing that, based on the documents he reviewed, the interviews he conducted, and his interactions and his staff's interactions with Hawkins prior to trial, he believed Hawkins was "perfectly competent to understand the nature of the proceedings, to confer with an attorney in his own defense and understand what was going on" at the time he was tried in January 2008. It is unclear whether the Court of Appeals knew of Dr. Estess's interactions with Hawkins when it reviewed his appeal from his 2008 conviction. Based on the totality of the evidence presented to it, "including admitted exhibits and testimony presented during the competency hearing," the district court found that Hawkins was both presently competent to stand trial and had been competent to stand trial in January 2008. However, the court found that the law of the case required it to retry the case.

*Hawkins II*, 155 Idaho at 70-71, 305 P.3d at 514-15. The State obtained permission to pursue an interlocutory appeal from this decision. In that appeal, the Idaho Supreme Court concluded that the law of the case doctrine did not prevent the district court from making a retroactive competency determination as to Hawkins because this Court's opinion contained "no legal analysis on the subject of retroactive competency determinations and no factual discussion . . . as to why one would not be possible in this case." The Supreme Court concluded that because the Court of Appeals had not possessed the necessary information to make any definitive ruling on the issue and did not conduct a legal analysis, its statement was merely dictum and thus not "necessary to the decision," as required for the law of the case doctrine to apply. *Id.* at 72-74, 305 P.3d at 516-18. For the same reasons, the Supreme Court held that the Court of Appeals' statement did not constitute a mandatory "directive" to the district court under Idaho Appellate

9

Rule 38. *Id.* at 74, 305 P.3d at 518. The Court further held that the State had not "waived" the issue as to whether a retroactive competency determination was permissible by failing to pursue a petition for review. *Id.* at 71-72, 305 P.3d at 515-16.

We conclude that *Hawkins II* controls here. In the analysis section of our opinion in *Tapp II*, we noted that Tapp argued "that, if the facts alleged in the affidavits and addendum are considered in the light most favorable to him, the district court should have granted him an opportunity to present such testimony at an evidentiary hearing in order to show diminished mental capacity and its effect on whether the confession was voluntary." In the same paragraph, this Court noted that the State disputed Tapp's requested remedy and we effectively declined to resolve the issue of whether Tapp had supported his claim with sufficient evidence as to require an evidentiary hearing. Instead we left the matter for the district court's determination, specifically recognizing that because the district court had dismissed on a legal ground divorced from the merits, it had yet to consider the effect of Tapp's additional facts regarding diminished mental capacity. We concluded that "[s]ince the district court did not consider [Tapp's] alleged additional facts in granting summary dismissal, we remand for the district court to do so." In the conclusion portion of our opinion, however, we expressed our disposition differently. This reference to an evidentiary hearing is dicta and was unnecessary to the decision because this Court had, in our preceding analysis, declined to address whether an evidentiary hearing was required. In our view, the circumstances leading to this Court's inadvertent statement in the concluding paragraph of *Tapp II* presents a more compelling case for nonapplication of the doctrine of law of the case than did our statement at issue in *Hawkins II*.

For these reasons, we hold that the district court did not err in entertaining the State's renewed motion for summary dismissal over Tapp's law of the case objection. Also in accord with *Hawkins II*, we hold that the State did not waive the issue as to whether summary dismissal was possible on remand by failing to pursue a petition for rehearing or review and that Idaho Appellate Rule 38 did not prohibit the district court's consideration of the State's motion.

**B.     The Merits of the Summary Dismissal**

Tapp next challenges the district court summary dismissal on the merits of his claim that his defense attorney was ineffective for failing to present evidence of Tapp's mental deficiencies to support the motion for suppression of the January 29 confessions.

A petition for post-conviction relief initiates a civil, rather than criminal, proceeding, governed by the Idaho Rules of Civil Procedure. I.C. § 19-4907; *State v. Yakovac*, 145 Idaho 437, 443, 180 P.3d 476, 482 (2008). *See also Pizzuto v. State*, 146 Idaho 720, 724, 202 P.3d 642, 646 (2008). Like plaintiffs in other civil actions, the petitioner must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. *Stuart v. State*, 118 Idaho 865, 869, 801 P.2d 1216, 1220 (1990); *Goodwin v. State*, 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct. App. 2002). A petition for post-conviction relief differs from a complaint in an ordinary civil action, however, in that it must contain more than "a short and plain statement of the claim" that would suffice for a complaint under I.R.C.P. 8(a)(1). *State v. Payne*, 146 Idaho 548, 560, 199 P.3d 123, 135 (2008); *Goodwin*, 138 Idaho at 271, 61 P.3d at 628. The petition must be verified with respect to facts within the personal knowledge of the petitioner, and affidavits, records, or other evidence supporting its allegations must be attached, or the petition must state why such supporting evidence is not included. I.C. § 19-4903. In other words, the petition must present or be accompanied by admissible evidence supporting its allegations, or it will be subject to dismissal. *Wolf v. State*, 152 Idaho 64, 67, 266 P.3d 1169, 1172 (Ct. App. 2011); *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994).

Idaho Code Section 19-4906(c) authorizes summary dismissal of a petition for post-conviction relief, either pursuant to a motion by a party or upon the court's own initiative, if "it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Payne*, 146 Idaho at 561, 199 P.3d at 136; *Roman*, 125 Idaho at 647, 873 P.2d at 901. Moreover, because the district court rather than a jury will be the trier of fact in the event of an evidentiary hearing, the district court is not constrained to draw inferences in the petitioner's favor, but is free to arrive at the most probable inferences to be drawn from the evidence. *Yakovac*, 145 Idaho at 444, 180 P.3d at 483; *Wolf*, 152 Idaho at 67, 266 P.3d at 1172; *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). Such inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them. *Chavez v. Barrus*, 146 Idaho 212, 218, 192 P.3d 1036,

1042 (2008); *Hayes*, 146 Idaho at 355, 195 P.2d at 714; *Farnsworth v. Dairymen's Creamery Ass'n*, 125 Idaho 866, 868, 876 P.2d 148, 150 (Ct. App. 1994).

Claims may be summarily dismissed if the petitioner's allegations are clearly disproven by the record of the criminal proceedings, if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, or if the petitioner's allegations do not justify relief as a matter of law. *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010); *McKay v. State*, 148 Idaho 567, 570, 225 P.3d 700, 703 (2010); *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009); *Charboneau v. State*, 144 Idaho 900, 903, 174 P.3d 870, 873 (2007); *Berg v. State*, 131 Idaho 517, 518, 960 P.2d 738, 739 (1998); *Murphy v. State*, 143 Idaho 139, 145, 139 P.3d 741, 747 (Ct. App. 2006); *Cootz v. State*, 129 Idaho 360, 368, 924 P.2d 622, 630 (Ct. App. 1996). Thus, summary dismissal of a claim for post-conviction relief is appropriate when the court can conclude, as a matter of law, that the petitioner is not entitled to relief even with all disputed facts construed in the petitioner's favor. For this reason, summary dismissal of a post-conviction petition may be appropriate even when the State does not controvert the petitioner's evidence. *See Payne*, 146 Idaho at 561, 199 P.3d at 136; *Roman*, 125 Idaho at 647, 873 P.2d at 901.

Conversely, if the petition, affidavits and other evidence supporting the petition allege facts that, if true, would entitle the petitioner to relief, the post-conviction claim may not be summarily dismissed. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004); *Berg*, 131 Idaho at 519, 960 P.2d at 740; *Stuart v. State*, 118 Idaho 932, 934, 801 P.2d 1283, 1285 (1990); *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 2008); *Roman*, 125 Idaho at 647, 873 P.2d at 901. If a genuine issue of material fact is presented, an evidentiary hearing must be conducted to resolve the factual issues. *Kelly*, 149 Idaho at 521, 236 P.3d at 1281; *Payne*, 146 Idaho at 561, 199 P.3d at 136; *Goodwin*, 138 Idaho at 272, 61 P.3d at 629.

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Berg*, 131 Idaho at 519, 960 P.2d at 740; *Sheahan*, 146 Idaho at 104, 190 P.3d at 923; *Roman*, 125 Idaho at 647, 873 P.2d at 901. Over questions of law, we exercise free review. *Rhoades v. State*, 148 Idaho 247, 250, 220 P.3d 1066, 1069 (2009); *Downing v. State*, 136 Idaho

12

367, 370, 33 P.3d 841, 844 (Ct. App. 2001); *Martinez v. State*, 130 Idaho 530, 532, 944 P.2d 127, 129 (Ct. App. 1997).

To determine whether a confession is voluntary, a court must examine the totality of the circumstances and ask whether the defendant's will was overborne by police conduct. *Arizona v. Fulminante*, 499 U.S. 279, 287-88 (1991); *State v. Troy*, 124 Idaho 211, 214, 858 P.2d 750, 753 (1993); *State v. Valero*, 153 Idaho 910, 912, 285 P.3d 1014, 1016 (Ct. App. 2012). In determining the voluntariness of a confession, a court should consider the characteristics of the accused and the details of the interrogation, including whether *Miranda* warnings were given, the youth of the accused, the accused's level of education or low intelligence, the length of the detention, the repeated and prolonged nature of the questioning, and deprivation of food or sleep. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *Troy*, 124 Idaho at 214, 858 P.2d at 753; *Valero*, 153 Idaho at 912, 285 P.3d at 1016. If, under the totality of the circumstances, the defendant's free will was overborne by threats, through direct or implied promises, or other forms of coercion, then the statement is not voluntary and is inadmissible. *Fulminante*, 499 U.S. at 285-87; *Troy*, 124 Idaho at 214, 858 P.2d at 753; *Valero*, 153 Idaho at 912, 285 P.3d at 1016. While one's "mental condition is surely relevant to an individual's susceptibility to police coercion," it cannot alone make a statement involuntary because "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 165-67 (1986); *see also State v. Doe*, 131 Idaho 709, 713, 963 P.2d 392, 396 (Ct. App. 1998). When a defendant alleges an interrogation to be coercive, the State bears the burden of proving voluntariness of the defendant's confession by a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 489 (1972); *State v. Yager*, 139 Idaho 680, 685, 85 P.3d 656, 661 (2004); *State v. Johns*, 112 Idaho 873, 878, 736 P.2d 1327, 1332 (1987).

On remand from the prior appeal in this case, the only issue to be addressed was whether Tapp's new evidence of diminished mental capacity, when weighed together with the remaining totality of the circumstances, showed that his January 29 confessions were involuntary. In its order, the district court discussed this evidence in detail, conducted its analysis, and concluded that there was no showing of involuntariness because the mental health evidence was "of limited utility."

Tapp's claims of error are limited. First, he appears to challenge the district court's statement in the dismissal order that "[o]n at least four occasions, a court has reviewed the January videotaped interview and confession and found no police coercion." Tapp asserts that because this Court stated in *Tapp II* that the trial court in the criminal case, in ruling on Tapp's suppression motion, "found the officers did offer an implied promise of leniency" it is established that some police coercion has occurred. Tapp contends that the district court erred by not considering this "coercion" in deciding the State's motion for summary dismissal.

Tapp's contention fails because neither on appeal nor in the proceedings below has he identified what this "implied promise of leniency" was, or when it was made, or by whom, or where the evidence in support of the criminal court's finding exists in the record. Tapp also makes no attempt to establish how this unknown "implied promise" induced any of his statements of confession. The suppression of evidence under the exclusionary rule is appropriate only where the challenged evidence is either directly or indirectly the product of illegal governmental activity. *Segura v. United States*, 468 U.S. 796, 805 (1984); *State v. Keene*, 144 Idaho 915, 918, 174 P.3d 885, 888 (Ct. App. 2007). Where a defendant seeks suppression of evidence allegedly gleaned through police misconduct, the defendant bears the initial burden of going forward with evidence to show a factual nexus between the illegality and the State's acquisition of the evidence. *Alderman v. United States*, 394 U.S. 165, 183 (1969); *Keene*, 144 Idaho at 918, 174 P.3d at 888. Tapp has not met his burden to present or identify in the record evidence of what the implied promise was or evidence that the claimed promise played any role in inducing his January 29 confessions. Error will not be presumed on appeal, and an appellant bears the burden of demonstrating error through the record. *State v. Willoughby*, 147 Idaho 482, 488, 211 P.3d 91, 97 (2009). Tapp implicitly asks this Court to construct his puzzle for him without providing us with any of the pieces. It is not the role of the district court or of this Court to do so.

Tapp also takes issue with the district court's statement in its memorandum decision that "[t]here is no evidence that the officers who interviewed Tapp were aware of some diminished capacity and tried to exploit it." Tapp complains, "That is not the legal test" to determine whether the confession of a person with a mental disability was involuntary. We agree that this is not an applicable legal standard. However, in making that statement the district court was not

14

purporting to set forth a legal standard. Rather, the court was recounting the nature of the evidence and, specifically, the absence of evidence of police misconduct.

As Tapp's challenges to the district court's judgment granting summary dismissal are without merit, the judgment must be affirmed.

## C.     The Petition for DNA Testing

Three days after filing the notice of appeal for this appeal from the summary dismissal of his action, Tapp filed *in this same case*, pursuant to I.C. § 19-4902, a petition and a subsequent amended petition for further DNA testing of semen recovered from the crime scene. The State filed a response stating that it did not object to the request for further DNA testing, but it requested that a specific laboratory in Texas do the testing. While this appeal was pending, the district court denied the motion on the ground that Tapp had failed to present a prima facie case that "identity was an issue in the trial that resulted in his . . . conviction," as required by I.C. § 19-4902(c)(1), and because the court could not make the determination required by I.C. § 19-4902(e)(1) that "the result of the testing has the scientific potential to produce new, noncumulative evidence that would show that it is more probable than not that the petitioner is innocent."

On appeal, Tapp initially contended that the district court erred by dismissing the petition without giving twenty days' notice under I.C. § 19-4906(b). The State concedes error, but for a different reason. It argues that under Idaho Appellate Rule 13(b), the district court had no authority to rule on the new petition for DNA testing while this appeal was pending. At oral argument, Tapp acknowledged that the State is correct. Idaho Appellate Rule 13(b) provides that in civil cases a trial court retains the authority to rule upon only certain enumerated matters while an appeal is pending, and a petition for DNA testing in not among those matters. Therefore, the district court had no authority to address the merits of Tapp's amended petition.[2] Accordingly, we affirm the order denying re-testing in this case because the district court lacked authority to grant the requested relief, but our affirmance is without prejudice to Tapp's ability to re-plead his request for DNA testing in a procedurally correct manner.

---

[2]     Further, even if the appeal had not been pending, the purported new petition and amended petition could not be properly filed in this case without Tapp first obtaining leave from the court to amend his initial petition. *See* Idaho Rule of Civil Procedure 15(a); *Cole v. State*, 135 Idaho 107, 111, 15 P.3d 820, 824 (2000); *Schultz v. State*, 151 Idaho 383, 387, 256 P.3d 791, 795 (Ct. App. 2011).

## III.

## CONCLUSION

The district court's judgment granting summary dismissal of Tapp's post-conviction action for ineffective assistance of counsel is affirmed. The district court's post-judgment order denying Tapp's request for DNA testing is affirmed without prejudice.

Chief Judge GUTIERREZ and Judge GRATTON **CONCUR.**