**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 38923**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2012 Opinion No. 42** |
| | ) | |
| **Plaintiff-Appellant,** | ) | **Filed: August 6, 2012** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **JOSE L. VALERO,** | ) | |
| | ) | |
| **Defendant-Respondent.** | ) | |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Payette County. Hon. Susan E. Wiebe, District Judge.

Order granting motion to suppress, affirmed.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Sara B. Thomas, State Appellate Public Defender; Jason C. Pintler, Deputy Appellate Public Defender, Boise, for respondent. Jason C. Pintler argued.

_____

GRATTON, Chief Judge

The State appeals from the district court's order suppressing Jose L. Valero's statements to law enforcement. The State argues that Valero's statements were made voluntarily and were not a product of police coercion. The State also argues, in the alternative, that even if police did coerce Valero's statements, the district court failed to review the voluntariness of those statements under the totality of the circumstances. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

The Fruitland Police Department began investigating a report that Valero inappropriately touched a fifteen-year-old foster child residing at his residence. Valero voluntarily met with the police at the police station. During that meeting, Valero denied all of the allegations and consented to a polygraph. Valero voluntarily appeared for the polygraph at the Ada County Sheriff's office and met with a detective. Prior to administering the polygraph, the detective

1

interviewed Valero and explained the polygraph. Valero acknowledged that he was free to leave at any time and that his participation was voluntary. Valero was provided with written *Miranda*[1] rights and signed a waiver of those rights. The total length of the interrogation was just under three and one-half hours and consisted of three parts: (1) the pre-polygraph interview; (2) the polygraph; and (3) the post-polygraph interview. Valero made the incriminating statements during the post-polygraph interview.

The State charged Valero with sexual abuse of a child and lewd conduct with a child. Valero moved to suppress the statements he made in the interview, contending that they were not made voluntarily. Valero alleged that due to language and cognitive difficulties he did not understand the *Miranda* rights he waived. The district court rejected the motion on that ground; however, tentatively ruled that the statements should be suppressed on the ground that the detective's tactics overbore Valero's will. After supplemental briefing by both parties, the district court affirmed the tentative order and suppressed the evidence on that basis. The State timely appealed.

## II.

## DISCUSSION

The State contends that the district court erred in suppressing Valero's statements. The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999). In the present case, the facts surrounding Valero's incriminating statements are undisputed as the police department videotaped the entire polygraph process.

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

In *State v. Cordova*, 137 Idaho 635, 51 P.3d 449 (Ct. App. 2002), we stated:

> The United States Supreme Court has recognized that a noncustodial interrogation might in some situations, by virtue of some special circumstance, be characterized as one where a defendant's confession was not given voluntarily. *See Beckwith v. United States*, 425 U.S. 341, 347-48 (1976); *see also State v. Troy*, 124 Idaho 211, 214, 858 P.2d 750, 753 (Ct. App. 1993). In order to find a violation of a defendant's due process rights by virtue of an involuntary confession, coercive police conduct is necessary. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986); *State v. Whiteley*, 124 Idaho 261, 268, 858 P.2d 800, 807 (Ct. App. 1993). The state must show by a preponderance of the evidence that the defendant's statements were voluntary. *Whiteley*, 124 Idaho at 268, 858 P.2d at 807.
>
> The proper inquiry is to look to the totality of the circumstances and then ask whether the defendant's will was overborne by the police conduct. *Arizona v. Fulminante*, 499 U.S. 279, 287 (1991); *Troy*, 124 Idaho at 214, 858 P.2d at 753. In determining the voluntariness of a confession, a court must look to the characteristics of the accused and the details of the interrogation, including: (1) whether Miranda warnings were given; (2) the youth of the accused; (3) the accused's level of education or low intelligence; (4) the length of the detention; (5) the repeated and prolonged nature of the questioning; and (6) deprivation of food or sleep. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *Troy*, 124 Idaho at 214, 858 P.2d at 753.

*Id.* at 638, 51 P.3d at 452. If the defendant's free will is undermined by threats or through direct or implied promises, then the statement is not voluntary and is inadmissible. *State v. Wilson*, 126 Idaho 926, 929, 894 P.2d 159, 162 (Ct. App. 1995).

The characteristics of the accused do not weigh in favor of determining that Valero's statements were involuntary. Valero was thirty-eight years old, with a high school education. Such a person is more resistant to interrogation than a person who is very young, uneducated, or weak-minded. *Cf. Davis v. North Carolina*, 384 U.S. 737, 742 (1966) (detainee had third or fourth-grade education and very low IQ); *Fikes v. Alabama*, 352 U.S. 191, 196-97 (1957) (detainee was an uneducated person of low intelligence, possibly with a mental illness); *Reck v. Pate*, 367 U.S. 433, 435 (1961) (detainee was "classified as mentally retarded and deficient by psychologists and psychiatrists"); *State v. Doe*, 131 Idaho 709, 712, 963 P.2d 392, 395 (Ct. App. 1998) (without some showing of coercion, detainee's young age and low intelligence, were not enough to prove involuntariness). The district court found that Valero spoke and understood English, a finding that is supported by the record. Furthermore, Valero was not deprived of food or sleep while being interrogated by the police.

3

Several details of the interrogation also do not weigh in favor of determining that Valero's statements were made involuntarily. Valero was provided *Miranda* warnings and stated that he understood the waiver of those rights. Valero acknowledged that he was at the police station on his own accord and could walk out the unlocked door at any time. The total time of the interrogation was just under three hours and twenty-five minutes which was not so arduous to be a coercive factor. *See Berghuis v. Thompkins*, __ US __, __, 130 S. Ct. 2250, 2263 (2010) ("there is no authority for the proposition that an interrogation of this length [three hours] is inherently coercive"); *State v. Radford*, 134 Idaho 187, 191, 998 P.2d 80, 84 (2000) (interview lasted only for about two hours was not an excessive length of time). Nonetheless, the district court's finding that the deceptive tactics used by the detective, under the totality of the circumstances, rendered the confession involuntary is supported by the evidence.

Deceptive police practices do not necessarily create coercion which would render a suspect's subsequent confession involuntary and excludable. *State v. Davila*, 127 Idaho 888, 892, 908 P.2d 581, 585 (Ct. App. 1995). Confessions derived during the course of interrogations have been upheld as voluntary, notwithstanding misrepresentations of facts by the police, such as telling a defendant that his fingerprints were found on physical evidence or at the scene. *Id.* (citing *Sovalik v. State*, 612 P.2d 1003 (Alaska 1980); *State v. Cobb*, 566 P.2d 285 (Ariz. 1977); *State v. Winters*, 556 P.2d 809, 812 (Ariz. Ct. App. 1976); *People v. Kashney*, 490 N.E.2d 688 (Ill. 1986); *State v. Haywood*, 439 N.W.2d 511 (Neb. 1989) (statement upheld even after defendant was told his fingerprints were found on bags of cocaine)). *See also State v. Welker*, 129 Idaho 805, 808, 932 P.2d 928, 931 (Ct. App. 1997) (citing *Shedelbower v. Estelle*, 885 F.2d 570, 574 (9th Cir. 1989) (confession was not solely a product of officer's false statement that victim had identified photograph of petitioner as one of her attackers); *State v. Kokoraleis*, 501 N.E.2d 207, 217 (Ill. App. Ct. 1986) (police officers' false statements that they had already obtained a confession from an accomplice implicating defendant in crime, did not render defendant's subsequent statements involuntary); *State v. Churchill*, 646 P.2d 1049, 1053-54 (Kan. 1982) (police officer's statement that codefendant had not passed polygraph examination was not a device calculated to produce a confession)). Courts have uniformly accepted the police tactic of "telling a suspect they have found some incriminating evidence to elicit statements from a suspect on the view that an innocent person would not be induced to confess by such police deception." *Id.* However, that acceptance wanes when the police misrepresent

4

the law. *Id.* (citing *Michigan v. Harvey*, 494 U.S. 344 (1990); *State v. Craig*, 864 P.2d 1240 (Mont. 1993)).

During the pre-polygraph interview, the detective extensively developed two principal themes which he would use throughout the interview. First, the detective repeatedly and substantially downplayed the seriousness of the allegations. Second, the detective expressed that the most important thing for Valero to do was to be truthful, because that would be the most important aspect of any report which might be given to the court in order to demonstrate that he was not a bad person. The following conversation is illustrative:

DETECTIVE: So [the girl] has made a few statements about some pretty minor issues, in the big scheme of things (inaudible) on my case here this is a homicide case I am working right now, (Valero laughs) and I've got have several rape cases and some big major issues so that take up lot of time and I work on. This case is (inaudible) not even a blip on the radar hardly because it's not really major allegations.

VALERO: Nothing really serious so you're saying?

DETECTIVE: Right this is where she has come forward and said there was some minor touching and some issues that are of non-significant value but because Health and Welfare is involved they have to investigate it. Right?

VALERO: Yeah, yeah.

DETECTIVE: So, what I say is because the polygraph is involved even if there were, even if there was some touching of her butt, or touching of her boob, or rubbing her hair, as long as you and I talk about those type of issues and we get those things cleared up at the end of today's process we can then hand the court system a report that says Jose was truthful and that's the main answer. Okay?

VALERO: Okay

DETECTIVE: So umm I don't know whether there's truth to those allegations, you do, but my just general philosophy is, even if those things are true, they are just minor issues. *They are not like some major issue that you and I can't get resolved today.*[2] Does that make sense?

---

[2] We have previously examined promises made by law enforcement officers based on the authority to fulfill such promises. *See State v. Garcia*, 143 Idaho 774, 152 P.3d 645 (Ct. App. 2006) and *State v. Kysar*, 114 Idaho 457, 757 P.2d 720 (Ct. App. 1988). These two decisions distinguished between promises made to suspects when the officer had the authority to fulfill the promise and when the officer did not have such authority. The detective's statement comes very close to promising that the matter could be taken care of on that day so long as Valero was truthful, something the detective could not promise.

VALERO:             Yeah.

(Emphasis added.)  In addition, the detective told Valero that "a lot of times when people come in and because they're such minor issues a lot of times, people that are involved in it will write them an apology letter."[3]  The officer thus represented an alleged offense that carries a maximum sentence of fifteen years of imprisonment, I.C. § 18-1506, as a "minor issue."  Valero himself began to refer to the allegations as minor.

The detective misrepresented the law regarding the polygraph.  Both before and after the polygraph the detective told Valero that the polygraph results would be admitted into court:

DETECTIVE:          Polygraphs are admissible in court. Okay?
VALERO:             What do you mean admissible? That word, there are some words I don't understand (inaudible) some words I have trouble
DETECTIVE:          Admissible means able to be used in court. Okay? So the results of this polygraph the police department and the court can bring that out in court.
VALERO:             Okay

The detective's statements about the admission of polygraphs are in direct conflict with the Idaho Supreme Court's holding in *State v. Perry*, 139 Idaho 520, 81 P.3d 1230 (2003), that "[a]s a general rule, results of polygraph examinations are inadmissible absent a stipulation by both parties."  *Id.* at 523, 81 P.3d at 1233.

After the polygraph, the detective misrepresented his ability to testify against Valero in court, based upon the results of the polygraph.  In addition, the detective made quasi-factual, quasi-legal misrepresentations regarding the polygraph itself.  Valero questioned how the polygraph could determine truthfulness and the detective described the bodily function sensors associated with the polygraph machine.  The detective represented to Valero that the polygraph was one hundred percent accurate:

---

[3]     Notably, once Valero made the incriminating statements, he stated that a person in his situation--an adult male caught fondling a minor--would only be required to write an apology letter to the victim, suggesting that the detective's themes developed prior to the polygraph had lasting effect on Valero.

| | |
|---|---|
| DETECTIVE: | I can testify in a court of law |
| VALERO: | Okay |
| DETECTIVE: | Right now that, one hundred percent, your hands |
| VALERO: | Touched her breasts |
| DETECTIVE: | Touched her breasts (pause) under her shirt |
| VALERO: | Under her shirt |

On more than one occasion, the detective conveyed to Valero that, from the polygraph, there was no question what Valero had done and, in essence, that the polygraph was determinative of his guilt. The coercive nature of this misrepresentation can be seen one last time as Valero attempted to deny the accusations, stating "I never would touch her but if that thing [polygraph] says I did . . . ." To which the detective responded "Well, you did." As noted above, the police are allowed to make misrepresentations to elicit confessions; however, acceptance wanes when the police misrepresent the law. *See Davila*, 127 Idaho at 892, 908 P.2d at 585.

After stating that he could testify one hundred percent to Valero's guilt, the detective returned to his themes. The detective again minimized the seriousness of the accusations, stating that they were "not the end of the world." Then, the detective stated: "What is getting you to the end of the world and getting you in a bad spot now is *the crime of lying to the police*." (Emphasis added). At that point, Valero was faced with the possibility of being punished for two crimes: (1) one based on the girl's allegations; and (2) the other purported crime of lying to the police and, according to the detective, the more serious of the two crimes. Aside from the possibility of being punished for two crimes, Valero was placed in the position of being able to get out of the purportedly greater crime of lying by confessing to the purportedly lesser crime of inappropriate touching. The district court properly found that this false choice resulted in Valero's will being overborne. In order to assure that Valero would choose to confess, the detective returned to the second theme; that he wanted to be able to tell the court that Valero was not a sexual deviant or was not trying to hurt the victim, adding:

| | |
|---|---|
| DETECTIVE: | And you touched her breasts. So, it's not a matter of what you did because we already know what you did. |
| VALERO: | Yea. |
| DETECTIVE: | I want to explain to the court that you're not this horrible, horrible person. You're not are you? |
| VALERO: | No I'm not. |
| DETECTIVE: | Okay then you have to right now when you look at the facts and I have to go to court now and say absolutely 100 percent Jose touched [the victim's] breasts. |

7

| VALERO: | Okay. |
| DETECTIVE: | Now the court says why did he touch her breasts? Was it because he is a rapist? |
| VALERO: | No. |
| DETECTIVE: | Is it because he's a molester? |
| VALERO: | No. |

The detective then again minimized the seriousness of the accusations and Valero's culpability by suggesting that the touching was because Valero was just curious or that the victim had been flirting with him, at which point Valero agreed and made incriminating statements.

The State cites to *State v. Wilson*, 126 Idaho 926, 894 P.2d 159 (Ct. App. 1995) as instructive that voluntariness is not overborne when a confession is obtained "by downplaying the seriousness of the charges, by stressing the harm that might come to Wilson's family and by making implied promises of leniency." *Id*. at 928-29, 894 P.2d at 161-62. However, we did not hold that those claimed circumstances could not result in involuntariness, relying instead upon the findings by the district court in that case:

> The district court, considering the totality of the circumstances, concluded that Wilson understood the nature of the rights being read to him and realized the seriousness of the events at the time. There was also evidence from which the district court could have found that [the lieutenant's] statements to Wilson were not sufficient to undermine Wilson's free will. These findings are supported by the evidence in the record and are not clearly erroneous.

*Id*. at 929, 894 P.2d at 162. Thus, we did not hold that downplaying the seriousness of the crime was insufficient to support a finding of involuntariness, but that the suspect in that case knew the seriousness of the crimes. *Id.* While we do not hold that downplaying the seriousness of the accusations, by itself, resulted in Valero's will being overborne, it is a factor in the totality of the circumstances. Most importantly, in this case, the detective utilized downplaying of the seriousness of the victim's accusations to juxtapose that alleged crime against a threat of being charged with a more serious crime of lying to the police, which the officer could prove "one hundred percent" because the polygraph established that Valero was lying. Thus, Valero was faced with a Hobson's choice.

Promises made by law enforcement officers without the authority to fulfill such promises may render a confession involuntary. *See State v. Kysar*, 114 Idaho 457, 459, 757 P.2d 720, 722 (Ct. App. 1988). The State asserts that "rather than make any such promise, [the detective] merely stated generally that telling the truth would be better for Valero than lying." However,

8

while the detective may have made no direct promises, by virtue of the themes developed and tactics used by the detective, how "telling the truth would be better" than lying certainly implicated matters outside of the detective's control. By stating that "they [the accusations] are not like some major issue that you and I can't get resolved today," the detective implied that he could make the matter go away if Valero would only tell the truth. By claiming that the polygraph was admissible and that "I have to go to court now and say absolutely one hundred percent Jose touched [the victim's] breasts," the detective impliedly promised admission of evidence in court conclusive in regard to proof of guilt. By suggesting that the court would want to know why Valero committed the acts charged, and that it was very important to be able to tell the court that Valero was not a molester, rapist, or sexual deviant, the detective implied that telling the truth could result in favorable treatment by the court, again something he could not deliver. Most critically, the detective's representation that Valero could be charged with a more serious crime of lying to police if he did not confess was inherently coercive. It is precisely the type of coercive tactic that could induce an innocent person to confess.

There is no error in the district court's finding that under the totality of the circumstances, Valero's incriminating statements made during the interrogation were not voluntary.[4] While downplaying the seriousness of the accusations may not, by itself, have rendered Valero's statements involuntary, being faced with the possibility of a greater crime of lying to the police did so. This is particularly true when coupled with the implications of favorable outcomes should the truth be told. In addition, the detective's legal misrepresentations and assertions of admissible evidence conclusively establishing guilt served to overbear Valero's will. The district court did not err in suppressing the statements under a totality of the circumstances analysis.

---

[4]     At oral argument, the State suggested that denials made by Valero after the incriminating statements demonstrate that his will was not overborne. However, we note, first, that Valero only attempted to deny that his lips touched the victim's nipple and that he inappropriately touched the victim's butt. Each time the officers exclaimed that they knew he did it, to which Valero stated "if you guys say I did." Again, Valero acquiesced to the assertions of conclusive proof. Second, at the time Valero made the incriminating statements he slumped forward in his chair with his hands between his knees, whereas before he sat upright with his arms across his chest. Nearly one-half hour passed before he was questioned again and Valero had again sat upright with his arms across his chest.

9

### III.
### CONCLUSION

Based upon the totality of the circumstances, Valero's statements to law enforcement during his interrogation were involuntary. Therefore, the district court's order suppressing Valero's statements is affirmed.

Judge LANSING and Judge GUTIERREZ **CONCUR.**