**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 44499**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2017 Opinion No. 58 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: November 13, 2017 |
| | ) | |
| v. | ) | Karel A. Lehrman, Clerk |
| | ) | |
| KASEY A. SMITH, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. David C. Nye, District Judge.

Judgment of conviction and sentence for one count of injury to children, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Andrea W. Reynolds, Deputy Appellate Public Defender, Boise, for appellant. Andrea W. Reynolds argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

_____

GUTIERREZ, Judge

Kasey A. Smith pled guilty to one count of injury to children. On appeal, Smith argues that the district court's denial of his motion to suppress should be reversed and his judgment of conviction vacated because his confession was not voluntary. Smith also asks to be resentenced, asserting that the district court erred in finding that he breached his plea agreement. For the following reasons, we affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

After receiving a report involving the sexual assault of a minor, an officer from the Pocatello Police Department questioned Smith, the alleged perpetrator. The officer asked Smith to sign a waiver stating that he understood that he did not have to proceed, that he could remain

1

silent, and that he was consenting to a truth verification examination. The waiver included the pertinent portions of the standard *Miranda*[1] warnings. Smith signed the waiver. During the examination, the officer performed a computer voice stress analysis (CVSA) test on Smith. The test detects stress patterns in a person's responses to questions and then formulates appropriate follow-up questions. Once the test concluded, the officer continued to question a nervous Smith, who confessed to touching the victim.

The State charged Smith with one count of lewd conduct with a child under sixteen by manual-genital contact. Smith then filed a motion to suppress his confession. After hearing oral arguments and reviewing Smith's brief, the district court denied the motion, concluding that Smith's confession was made knowingly, intelligently, and voluntarily.

The State and Smith subsequently reached a plea agreement. The plea agreement, in its entirety, reads:

1. The State will amend the charge to Felony Injury to Child.
2. The State will recommend an underlying sentence of 3 and 7.
3. The Defendant will complete a Psycho-sexual evaluation with a full disclosure polygraph (PSE).
4. If the PSE returns with no other hands on victims and low to moderate risk to re-offend, the Stat[e] will concur in the PSI with no more than a rider. If not, the State can argue for imposition of sentence.
5. Defendant can argue for any sentence.

Smith pled guilty to injury to children, but reserved his right to appeal the order denying his motion to suppress. The district court accepted the plea.

At sentencing, the State questioned whether it was still bound by the plea agreement due to the fact deception was found during the polygraph examination Smith was required to complete. The district court determined that Smith never completed the polygraph, meaning that the State was not required to perform under the agreement. At the continued sentencing hearing, the State recommended a unified sentence of ten years with a minimum period of confinement of four years, without a period of retained jurisdiction. This was contrary to the terms of the plea agreement. The district court imposed a sentence of ten years, with a minimum period of confinement of three years. Smith filed an appeal timely from the entry of judgment.

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966). Smith notes that the *Miranda* waiver he signed failed to advise him that an attorney would be provided if he could not afford one. However, Smith concedes that he did not challenge the adequacy of the *Miranda* warnings in the district court, and he does not raise the adequacy of the warnings as a separate issue on appeal.

## II.

## ANALYSIS

### A.     Voluntariness of Confession

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

To determine whether a confession is voluntary, a court must examine the totality of the circumstances and ask whether the defendant's will was overborne by police conduct. *Arizona v. Fulminante*, 499 U.S. 279, 287-88 (1991); *State v. Troy*, 124 Idaho 211, 214, 858 P.2d 750, 753 (1993); *State v. Valero*, 153 Idaho 910, 912, 285 P.3d 1014, 1016 (Ct. App. 2012). In determining the voluntariness of a confession, a court should consider the characteristics of the accused and the details of the interrogation, including whether *Miranda* warnings were given, the youth of the accused, the accused's level of education or low intelligence, the length of the detention, the repeated and prolonged nature of the questioning, and the deprivation of food or sleep. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *Troy*, 124 Idaho at 214, 858 P.2d at 753; *Valero*, 153 Idaho at 912, 285 P.3d at 1016. The presence or absence of *Miranda* warnings is a particularly significant factor. *Missouri v. Seibert*, 542 U.S. 600, 608-09 (2004) ("[M]aintaining that a statement is involuntary even though given after warnings and voluntary waiver of rights requires unusual stamina, and litigation over voluntariness tends to end with the finding of a valid waiver."); *Berkemer v. McCarty*, 468 U.S. 420, 433 n.20 (1984) ("[C]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare."). While one's "mental condition is surely relevant to an individual's susceptibility to police coercion," it cannot alone make a statement involuntary. *Colorado v. Connelly*, 479 U.S. 157, 165 (1986); *see also State v. Doe*, 131 Idaho 709, 713, 963 P.2d 392, 396 (Ct. App. 1998). If, under the totality of circumstances, the defendant's free will was

3

overborne by threats, through direct or implied promises or other forms of coercion, then the statement is not voluntary and is inadmissible. *Fulminante*, 499 U.S. at 285-87; *Troy*, 124 Idaho at 214, 858 P.2d at 753; *Valero*, 153 Idaho at 912, 285 P.3d at 1016. When a defendant alleges an interrogation is coercive, the State bears the burden of proving voluntariness of the defendant's confession by a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 489 (1972); *State v. Yager*, 139 Idaho 680, 685, 85 P.3d 656, 661 (2004); *State v. Johns*, 112 Idaho 873, 878, 736 P.2d 1327, 1332 (1987).

In determining whether to grant Smith's motion to suppress, the district court considered the totality of the circumstances, including Smith's signing of a *Miranda* waiver and the fact that he never invoked his right to silence or right to counsel. The district court also found that nervousness is to be expected during an interrogation. Notably, the district court failed to find any improper actions on the part of the officer, explaining that there was "no evidence to support the claim of coercion."

### 1.    Validity of *Miranda* waiver

Smith first asserts that he was not properly informed of his *Miranda* rights, meaning he could not have knowingly, intelligently, and voluntarily waived them. Any waiver of *Miranda* rights or the underlying constitutional privilege against self-incrimination must be made knowingly, voluntarily, and intelligently. *State v. Dunn*, 134 Idaho 165, 169, 997 P.2d 626, 630 (Ct. App. 2000). The State bears the burden of demonstrating that an individual has knowingly, voluntarily, and intelligently waived his or her rights by a preponderance of the evidence. *Doe*, 131 Idaho at 712, 963 P.2d at 395. A trial court's conclusion that a defendant made a knowing and voluntary waiver of his or her *Miranda* rights will not be disturbed on appeal where it is supported by substantial and competent evidence. *State v. Luke*, 134 Idaho 294, 297, 1 P.3d 795, 798 (2000). An appellate review of this waiver issue encompasses the totality of the circumstances. *State v. Johnson*, 126 Idaho 859, 863, 893 P.2d 806, 810 (Ct. App. 1995).

Smith argues that because he was not verbally informed of his rights before signing the *Miranda* waiver, the process was improper. We know of no case requiring verbal explanations of the waiver, though it is good practice as it provides further proof that the waiver was done knowingly and intelligently. The record is unclear as to whether the officer provided the warnings in verbal form and written form, or merely written form, but evidence explored in more detail below supports the district court's finding that Smith signed the waiver knowingly,

4

intelligently, and voluntarily regardless of whether the warnings were read out loud or merely provided in written form.[2]

Smith's appellate counsel contends that it is not clear that Smith understood the *Miranda* waiver. Smith's trial counsel furthered a similar argument, pointing out in the brief in support of the motion to suppress that the police never inquired into Smith's educational background. At the suppression hearing, the district court asked Smith's trial counsel if his argument was that Smith "couldn't understand that [*Miranda* waiver] form?" When Smith's trial counsel responded, "It's not on the recording, so we have no way of knowing," the district court reminded him, "Your client knows if he understood it or not." Trial counsel did not introduce evidence of any intellectual disabilities or lack of education to bolster the contention that Smith may have not understood the *Miranda* waiver. The State, however, elicited testimony from the officer showing that he asked Smith if he had any questions regarding the waiver and that Smith responded that he did not have any questions. During a previous videotaped interview, a different officer working on this case had Smith read the waiver out loud and Smith did not appear to struggle with his reading fluency. Another factor weighing in favor of finding that Smith understood the *Miranda* waiver is the fact that this is not his first encounter with law enforcement; he has an extensive criminal record. *See, e.g.*, *United States v. Rojas-Tapia*, 446 F.3d 1, 8 (1st Cir. 2006) (relying on the defendant's extensive prior record to counterbalance any intellectual deficiencies he may have had for purposes of making a voluntary confession after being read his *Miranda* rights, as he had "repeated earlier exposure to *Miranda* warnings"); *see also People v. Davis*, 208 P.3d 78, 117 (Cal. 2009) ("That defendant was no stranger to the criminal justice system and had fully waived his *Miranda* rights on previous occasions . . . reinforces our conclusion that his *Miranda* waiver . . . was voluntary, knowing, and intelligent."). Evidence that Smith did not understand his *Miranda* rights before knowingly, voluntarily, and

---

[2] The district court found that before starting the interview and asking Smith to sign the *Miranda* waiver, "[the officer] informed Smith of his rights and what was going to happen that day." At the suppression hearing, the officer who conducted the CVSA answered, "yes," when the prosecutor asked whether he "gave [Smith] his *Miranda* warnings." This was done before the officer began recording the interview, which is why the audio recording is not helpful in determining whether the warnings were given verbally or merely in written form. However, the officer also answered, "yes," when the prosecutor asked, "So did you go over that--did you go over any form with the defendant?"

5

intelligently waiving them is sparse at best.[3]  The district court's finding that Smith knowingly, voluntarily, and intelligently waived his *Miranda* rights is supported by substantial and competent evidence in the record.

### 2.    Analysis of the officer's conduct

Smith further contends that his confession was involuntary because, inter alia, the officer made misrepresentations concerning the accuracy of the CVSA test.  Deceptive police practices do not necessarily create coercion which would render a suspect's subsequent confession involuntary and excludable.  *State v. Davila*, 127 Idaho 888, 892, 908 P.2d 581, 585 (Ct. App. 1995).  Confessions derived during the course of interrogations have been upheld as voluntary, notwithstanding misrepresentations of facts by the police, such as telling a defendant that his fingerprints were found on physical evidence or at the scene.[4]  *Id.*  Courts have uniformly accepted the police tactic of "telling a suspect they have found some incriminating evidence to elicit statements from a suspect on the view that an innocent person would not be induced to confess by such police deception."  *Id.*  However, that acceptance wanes when the police misrepresent the law.  *Id.*

Smith argues that *Valero*, 153 Idaho at 914-15, 285 P.3d at 1018-19 requires us to hold the confession was involuntary because the officer here misrepresented the accuracy of the CVSA test.  Specifically, the officer stated, "I have this test saying it absolutely shows me that this happened."  But the defendant's statements in *Valero* were deemed involuntary because the officer misrepresented the law regarding the admissibility of polygraph results, not because he

---

[3]    Smith also contends that he "arguably sought to exercise his *Miranda* rights by [asking to contact] his wife during the interview."  Asking for relatives and other nonattorneys does not constitute an invocation of the right to be silent or right to counsel.  *Fare v. Michael C.*, 442 U.S. 707, 723-24 (1979) ("The State cannot transmute the relationship between probation officer and juvenile offender into the type of relationship between attorney and client that was essential to the holding of *Miranda* . . . ."); *State v. Crowhurst*, 470 A.2d 1138, 1142 (R.I. 1984) ("Even if Crowhurst had specifically requested to speak with his wife, such a request does not in and of itself invoke his right to be silent or his right to counsel.").

[4]    Smith correctly notes that while deception or trickery does not automatically make a confession involuntary, "a court must weigh the deception or trickery against such circumstances as the defendant's knowledge of his right to remain silent and his apparent ability to make a rational decision."  *State v. Welker*, 129 Idaho 805, 808, 932 P.2d 928, 931 (Ct. App. 1997) (citations omitted).

6

misrepresented the accuracy of the test when he stated that "he could testify one hundred percent to Valero's guilt." *Id.* at 914, 285 P.3d at 1018. The phrase "could testify" is what is important in that sentence, not the phrase "one hundred percent." Here, the officer never told Smith that the CVSA results would be used against him in court. Rather, when talking about sentencing, the officer said he would have to inform the court that, "I have this test saying it absolutely shows me that this happened but he refuses to do anything to help it out." This is not a misstatement of the law. The results of truth verification tests, though inadmissible at trial, are admissible at sentencing hearings. *See State v. Martinez*, 154 Idaho 940, 947-48, 303 P.3d 627, 634-35 (Ct. App. 2013); *see also Gonzales v. State*, 151 Idaho 168, 170, 254 P.3d 69, 71 (Ct. App. 2011). Accordingly, *Valero* does not mandate a reversal of the district court's denial of Smith's motion to suppress based on the officer's misrepresentations as to the accuracy of the CVSA test.

Smith further argues the officer misrepresented the law by stating that if Smith did not accept responsibility for his actions, the court would not have "any other recourse than to maybe impose the maximum." First, the officer qualified his statement with the word "maybe." Second, courts give great consideration to lack of remorse and refusal to recognize culpability during sentencing because these factors play an important role in the court's determination of the rehabilitative potential of a defendant. *See, e.g.*, *State v. Howry*, 127 Idaho 94, 95-96, 896 P.2d 1002, 1003-04 (Ct. App. 1995). Third, lack of remorse has led to the imposition of maximum sentences. *See, e.g.*, *State v. Dallas*, 109 Idaho 670, 675, 710 P.2d 580, 585 (1985). Therefore, the officer was not incorrect in stating that the court may have no other recourse than to impose the maximum if Smith refused to accept responsibility.

This Court, in *Valero*, also gave weight to the fact that the officer "represented an alleged offense that carries a maximum sentence of fifteen years of imprisonment, I.C. § 18-1506, as a 'minor issue.'" *Valero*, 153 Idaho at 914, 285 P.3d at 1018. In this case, the officer refers to the alleged conduct as a "mistake" and appears to trivialize the alleged conduct, but the fact that an officer downplayed the seriousness of a situation does not make a confession involuntary if the suspect was aware of the seriousness of the situation. *See State v. Wilson*, 126 Idaho 926, 929, 894 P.2d 159, 162 (Ct. App. 1995). Though the officer in this case appears to downplay the seriousness at times, he also explains that if Smith admits to the "mistake" the issue "will go to the prosecutor and then go to the court." Any perceived trivialization also is counterbalanced by

7

the officer talking about the court possibly imposing the maximum sentence if Smith did not accept responsibility for his actions. Viewing the questioning as a whole, Smith was sufficiently apprised of the seriousness of the accusation.

Smith also protests that the officer overstated the importance of accepting responsibility. We must therefore examine the officer's exact words to determine if they were sufficiently coercive to cause Smith's will to be overborne. The officer told Smith that accepting responsibility "always helps." Though this Court has explained that an *Alford*[5] plea does not *necessarily* result in a longer sentence than would be imposed if a defendant accepted responsibility, it is difficult to deny that refusing to accept responsibility generally affects sentences in a deleterious manner and also adversely affects an individual's chance of obtaining parole. *See Steele v. State*, 153 Idaho 783, 788-90, 291 P.3d 466, 471-72 (Ct. App. 2012) (noting that at Steele's sentencing hearing, the district court stated, "The most problematic of all of this is the fact that you simply are not accepting responsibility for your conduct."); *cf. State v. Alger*, 100 Idaho 675, 679-80, 603 P.2d 1009, 1013-14 (1979) ("Indications of cooperation are routinely brought to the attention of a sentencing judge."). Though the officer's phrasing may have technically been inaccurate--it would have been more accurate to say accepting responsibility "usually helps" or "can't hurt"--it was a harmless misstatement of the law. *See Kettman v. State*, 362 S.E.2d 342, 346 (Ga. 1987) (holding that an officer's statement that the "only thing that can help anybody out at a time like this is the truth" did not render a confession involuntary); *see also Humphries v. State*, 295 S.W.2d 218, 220 (Tex. Crim. App. 1956) (holding that an officer's statement that it was "always best to tell the truth" did not render a confession involuntary). The context for the officer's statement makes it clear that it was not just an appeal to conscience, but rather an implication that Smith's punishment would be less severe if he accepted responsibility. Speaking in absolutes when discussing legal repercussions may not be best practice, but in this instance it is not enough to render Smith's confession involuntary.

A confession can also be rendered involuntary by an officer's false promises, either express or implied. For instance, if an officer represents that he has the authority to affect the charges brought against the defendant or promises leniency in return for the truth, a confession may be deemed involuntary. *Troy*, 124 Idaho at 215-16, 858 P.2d at 754-55. The officer, in

---

[5]     *See North Carolina v. Alford*, 400 U.S. 25 (1970).

trying to convince Smith to admit guilt, said, "I'll guarantee you that [the judge is] not coming down harder on you [if you accept responsibility, as opposed to denying the accusation]." Read in isolation, this appears to be a promise of leniency that the officer had no way of ensuring. However, the officer also stated that he had "limited ability to make recommendations" and could not predict a specific sentence length. He also explained that his views were based on his personal observations, "I've been doing this for twenty years [and accepting responsibility has never made a person worse off]." The officer's other statements made it clear that he did not have the authority to affect the charges or sentencing. Therefore, the officer's "guarantee" was not so much a promise of leniency as it was a figure of speech. Even if we label it a promise of leniency, this is one instance where a promise of leniency does not render a confession involuntary. *See Alger*, 100 Idaho at 679-80, 603 P.2d at 1013-14 ("Nevertheless, even [if] such actions were deemed to be promises of leniency, they do not necessarily render a confession involuntary."); *Wilson*, 126 Idaho at 929, 894 P.2d at 162 ("Vague assurances of leniency, in and of themselves, do not necessarily render a confession inadmissible."). In our view, the interrogation tactics employed by the officer are not coercive enough to render the confession involuntary.

In sum, the factor weighing heaviest in favor of the State is the fact that Smith signed a *Miranda* waiver. *See Seibert*, 542 U.S. at 608-09. The district court found the waiver to be valid as it was in writing, and Smith never indicated that he did not understand it. We accept this finding, as Smith did not provide the district court with evidence of low intelligence either at the hearing or in his brief supporting his motion to suppress.[6] Moreover, Smith is not a minor, so

---

[6] Though the presentence report indicates that Smith quit school before finishing the eleventh grade, was enrolled in some special education classes, and possessed a below average IQ score of 81, it would be improper to consider these facts on appeal as they were not presented to the district court at the time the motion to suppress was being considered. The only indication of Smith's low intelligence that was provided to the district court was contained in the video recording of the CVSA interview, which contains this statement from Smith: "I don't get what you mean by 'context.' I didn't graduate; I'm not that smart, alright." The fact that one did not graduate high school does not, absent additional facts of low intelligence, suggest that one could not knowingly and intelligently sign a *Miranda* waiver. *Compare United States v. Bautista-Avila*, 6 F.3d 1360, 1365-66 (9th Cir. 1993) (affirming the district court's determination that the defendant's *Miranda* waiver was knowing and intelligent, despite the defendant only finishing the sixth grade); *State v. Gallegos*, 120 Idaho 894, 898-99, 821 P.2d 949, 954-55 (1991) (holding waiver to be knowing and voluntary despite the defendant receiving a limited grade school education in Mexico), *with Sims v. Georgia*, 389 U.S. 404, 407 (1967) (taking into consideration

the youth factor does not weigh in his favor. The length of the interrogation, at fifty minutes, also fails to suggest the confession was involuntary. We need not address the issue of food or sleep deprivation, as Smith makes no argument and presents no evidence regarding those factors. As to the officer's deceptive statements regarding the CVSA test, we hold that any deception on the part of the officer was well within the bounds of acceptable police tactics in regard to this particular defendant due to the aforementioned factors. Moreover, any potential misrepresentations or promises the officer made were corrected by later statements and context, dampening their impact enough that we cannot hold the officer's conduct was overbearing. Accordingly, we hold that the district court did not err in denying Smith's motion to suppress, as his confession was not coerced by the officer and thus voluntary.

## B.    Breach of Plea Agreement

Smith contends that the State breached the plea agreement when it recommended a sentence that deviated from the sentence contained in the plea agreement. The State argues that Smith breached the plea agreement first, thereby relieving the State of its duties, by refusing to complete a polygraph. Smith and the State disagree over whether participation in the post-test interview portion of the polygraph examination process is required to "complete Psycho-sexual evaluation with a full disclosure polygraph."

Whether a plea agreement has been breached is a question of law to be reviewed by this Court de novo, in accordance with contract law standards. *State v. Jafek*, 141 Idaho 71, 73, 106 P.3d 397, 399 (2005). Smith has the burden of proving the State breached the plea agreement. *See State v. Acuna*, 154 Idaho 139, 141, 294 P.3d 1151, 1153 (Ct. App. 2013). In determining whether the State has breached a plea agreement, a court must examine the language of the plea agreement and, where the language of that plea agreement is ambiguous, those ambiguities shall be resolved in favor of the defendant. *Id.* If the language of the document is unambiguous,

the fact the defendant was illiterate and possessed only a third-grade education). Moreover, *Miranda* waivers are usually written at a fifth to eighth-grade reading level, and the psychosexual report indicates that Smith reads at approximately a seventh-grade reading level. *See People v. Al-Yousif*, 49 P.3d 1165, 1171 (Colo. 2002) (en banc) (providing testimony of a linguistics professor that the *Miranda* warnings "required a seventh-grade reading level"); *Linton v. State*, 275 S.W.3d 493, 497 (Tex. Crim. App. 2009) (providing expert testimony that "*Miranda* warnings are at an 8th grade reading level"); *State v. Dutchie*, 969 P.2d 422, 428 (Utah 1998) (providing expert testimony that the *Miranda* warnings are "equivalent to a fifth or sixth grade reading level").

given its ordinary and well-understood meaning, we will not look beyond the four corners of the agreement to determine the intent of the parties. *Id.*

It is well established that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled. *Santobello v. New York*, 404 U.S. 257, 262 (1971). Like a contract, a valid plea agreement binds the State to perform the promised obligations. *Puckett v. United States*, 556 U.S. 129, 137 (2009). The State's failure to comply with its obligations constitutes a breach of the agreement and entitles the defendant to appropriate relief. *Id.* As a remedy, the court may order specific performance of the agreement or may permit the defendant to withdraw the guilty plea. *Santobello*, 404 U.S. at 263; *State v. Jones*, 139 Idaho 299, 302, 77 P.3d 988, 991 (Ct. App. 2003).

One of the terms of Smith's plea agreement was that he would "complete a Psycho-sexual evaluation with a full disclosure polygraph (PSE)." The district court determined that because Smith refused to discuss the indicated deception in the relevant questions during the post-test interview, he "never completed the polygraph." Smith contends that he was not obligated to complete a post-polygraph interrogation, as it is not within the scope of the term "full disclosure polygraph." The question, therefore, is whether cooperative participation in the post-test interview is required in order to complete a full disclosure polygraph.

The polygraph examiner's own statements are inconsistent, lending support to both party's arguments. For instance, the polygraph examiner noted that when he confronted Smith about his deceptive responses, Smith refused to speak with him and "the polygraph exam ended." This suggests the post-test interview was part of the polygraph exam. However, in the same report, the polygraph examiner included subsections titled "pre-test interview," "test administration," and "post-test interview," writing: "During the post-test interview, I elicited the following information: (1) Smith's responses to the polygraph examination indicated significant response and deception was indicated to the relevant questions." This suggests that the polygraph examination was distinct from the pre-test and post-test interviews. Reading the entirety of the report, we conclude that the polygraph examiner uses the term polygraph examination to mean both the actual polygraph test and the entire examination process, depending on the context of the sentence.

It is apparent from the structure and wording of the report that Smith did complete the polygraph test. However, "complete a Psycho-sexual evaluation with a full disclosure polygraph" is different than "take a polygraph test." Though Smith did *take* the polygraph test in its entirety, he did not *complete* the entire examination process. The purpose of the State's condition, as evident from the "full disclosure" requirement, was to formulate an informed decision as to Smith's recidivism risk. *See generally State v. Bailey*, 161 Idaho 887, 392 P.3d 1228 (2017) (discussing polygraphs and risk assessment). Thus, this condition in the plea agreement--if read in context--requires participation and cooperation in the pre-test and post-test interviews held in conjunction with the administration of the actual polygraph test. Because Smith did not complete the entire polygraph examination process, the State was released from the terms of the plea agreement, allowing it to recommend any sentence it deemed appropriate.

### III.

### CONCLUSION

The district court did not err in denying Smith's motion to suppress. The existence of a *Miranda* waiver, which the evidence in the record indicates was signed knowingly, intelligently, and voluntarily, is a significant factor in our determination that the confession was voluntary. Smith does present some evidence of misstatements of the law and assurances of leniency made by the officer, but context and qualifying statements cure any coercive effect these statements may have had in isolation. We also hold that Smith's refusal to participate in the post-test interview violated his plea agreement, as he did not complete the polygraph examination process; he merely completed the test portion of the examination process. Therefore, the State was free to recommend any sentence it thought appropriate. Accordingly, we affirm the judgment of conviction and the sentence for one count of injury to children.

Chief Judge GRATTON and Judge HUSKEY **CONCUR**.

12