**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 50081**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: July 11, 2024** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| DOMINICK JAMES EDWARDS, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Elmore County. Hon. Theodore Fleming, District Judge.

Order denying motion to suppress and judgment of conviction, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Kimberly A. Coster, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Judge

Dominick James Edwards appeals from his judgment of conviction for sexual abuse of a child. Edwards argues the district court erred in denying his motion to suppress because his confession was involuntary. Edwards' confession was not coerced, and his will was not overborne. The totality of the circumstances supports the district court's finding that the confession was voluntary. The order denying Edwards' motion to suppress and his judgment of conviction are affirmed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

A detective investigated a claim of sexual contact between Edwards and fifteen-year-old K.B. The detective called Edwards and scheduled an interview with him at the police department. Edwards came to the interview, was *Mirandized*, and thereafter, admitted he sexually touched K.B.

1

and K.B. touched him sexually but he denied sexual intercourse. Edwards was charged with two counts of lewd conduct with a minor under sixteen, Idaho Code § 18-1508. Edwards filed a motion to suppress his confession, arguing it was obtained in violation of his Fifth and Fourteenth Amendment rights under the United States Constitution and Section 13 to Article 1 of the Idaho State Constitution.[1]

Following a hearing on the motion to suppress, the district court suppressed Edwards' confession because the State failed to comply with the requirements of *Miranda*[2]; Edwards selectively invoked his right to remain silent; and because his *Miranda* waiver was conditioned on being allowed to return to work that day, the State's failure to fulfill that condition rendered the waiver invalid. After issuing its ruling, the district court sua sponte decided to set the matter for rehearing to give itself time to reconsider its decision.

At the rehearing, additional testimony was given, and the district court noted that it again watched the video of Edwards' confession. The court reversed its earlier decision, this time denying Edwards' motion to suppress his confession. The district court reasoned that Edwards was fully advised of his *Miranda* rights, had not unequivocally invoked his right to remain silent, and there was no "trickery, deception, promises, or conduct on the part of the detective that would have overcome or overbore the will" of Edwards, so Edwards voluntarily made the confession to the detective. Pursuant to a plea agreement, Edwards pleaded guilty to the amended charge of sexual abuse of a child, I.C. § 18-1506(d), reserving the right to appeal the denial of his motion to suppress. Edwards timely appealed.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts,

---

[1] On appeal, Edwards does not make an argument that his claims should be analyzed differently under Article 1, Section 13 of the Idaho Constitution than the Fifth and Fourteenth Amendments to the United States Constitution. Therefore, the Court will rely on judicial interpretation of the Fifth and Fourteenth Amendments in its analysis of Edwards' claims.

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Edwards argues the district court erred in denying his motion to suppress because his confession was involuntary. The State argues that the district court correctly concluded there was no evidence of coercion, trickery, or deceit, and thus, Edwards' confession was voluntary, and there is no basis on which to suppress the confession.

In order to find a violation of a defendant's due process rights by virtue of an involuntary confession, coercive police conduct is necessary. *State v. Valero*, 153 Idaho 910, 911, 285 P.3d 1014, 1015 (Ct. App. 2012). Once a defendant alleges a coercive interrogation, the State bears the burden to prove by a preponderance of the evidence that the defendant's statements were made voluntarily. *State v. Smith*, 162 Idaho 878, 882, 406 P.3d 890, 894 (Ct. App. 2017). In evaluating the voluntariness of statements made during a non-custodial interrogation, the proper inquiry is to look to the totality of the circumstances and then ask whether the defendant's will was overborne. *Id.* When considering the totality of the circumstances, the court must look to the characteristics of the accused and the details of the interrogation, including whether *Miranda* warnings were given, the youth of the accused, the accused's level of education or intelligence, the length of detention, the repeated and prolonged nature of the questioning, and deprivation of food or sleep. *State v. Moore*, 170 Idaho 783, 795, 516 P.3d 1054, 1066 (2022). If the defendant's free will is undermined by threats or through direct or implied promises, then the statement is not voluntary and is inadmissible. *State v. Samuel*, 165 Idaho 746, 766, 452 P.3d 768, 788 (2019); *see also State v. Stone*, 154 Idaho 949, 953, 303 P.3d 636, 640 (Ct. App. 2013).

Regarding the totality of the circumstances, to show his confession was involuntary, Edwards only challenges the details of the interrogation and his personal characteristics. As to the totality of the remaining circumstances, the record reflects that Edwards was working full time, in a committed relationship, acknowledged his previous drug problem and had been able to overcome his substance abuse issue because of his girlfriend. Edwards was an adult, the interview was brief before Edwards made the incriminating statements, Edwards was not deprived of food or sleep, and Edwards appeared to have an adequate level of education and intelligence to understand the

3

questions asked and to waive his *Miranda* rights. Because Edwards does not challenge these factors on appeal, those circumstances weigh in favor of finding Edwards' confession was voluntary and we need not further address them.

Regarding the details of the interrogation, on appeal, Edwards begins by arguing that the detective's "deceptive tactics resulted in psychological coercion that overbore Mr. Edwards' free will, thus rendering his confession involuntary and inadmissible at trial." In support of his assertion, Edwards relies on *Valero*, 153 Idaho 910, 295 P.3d 1014. In *Valero*, this Court held an officer used impermissible coercive tactics to obtain a confession. First, the detective repeatedly and substantially downplayed the seriousness of the allegations. *Id.* at 913, 295 P.3d at 1017. Second, the detective misrepresented the law to Valero by telling him the polygraph results were admissible in court and that the most important thing was for Valero to be truthful, as that would be the most important part of any report conveyed to the court. *Id.* at 913-14, 295 P.3d at 1017-18. This Court held that the detective's technique of downplaying the seriousness of the victim's accusations to then juxtapose that alleged crime against a threat of being charged with a more serious crime of lying to the police, was a coercive tactic that rendered the confession involuntary. *Id.* at 915, 295 P.3d at 1019. As part of finding that particular technique coercive was the officer's statement that he could prove Valero's guilt "one hundred percent" because the polygraph established that Valero was lying. *Id.* This Court has stated, however, that deception or trickery does not automatically make a confession involuntary. *State v. Hays*, 159 Idaho 476, 485, 362 P.3d 551, 560 (Ct. App. 2015). In fact, this Court has previously noted the acceptable police tactic of making misrepresentations concerning incriminating evidence to elicit confessions; however, that acceptance wanes when police misrepresent the law. *Smith*, 162 Idaho at 883, 406 P.3d at 895; *Valero*, 153 Idaho at 913, 285 P.3d at 1017.

Edwards asserts that like in *Valero*, in this case, the detective misrepresented the law by making false representations to Edwards that he could only leave if he cooperated and confessed. Edwards argues that these statements show that the detective "strongly suggested that leaving would be possible *only* if Mr. Edwards cooperated with the detective, and then *only* if he confessed." The district court held that the detective "never made a promise that [Edwards] could leave," and "Nothing about the detective's response evidences trickery or deception or an affirmative indication of a deal, a bargain, an agreement that the defendant could go home." The district court noted, as to Edwards' statements about going home, that the detective's "statements

4

concerning leaving were always in the form of a question or an inquiry of the detective in response to [them]. The detective either had no response, inquired about the time, [or] told him he understood his concern."

The district court's finding is supported by the record. The record is devoid of any express statement by the detective that Edwards could only leave if he cooperated, and that cooperation meant a confession. Similarly, the record does not reflect that the detective "strongly suggested" the same idea. First, nothing in the record shows that the detective made any false representations or promises to Edwards about leaving after the interview concluded. During the interview, in response to Edwards asking if he was going to jail, the detective responded, "Not that I know of." Next, when Edwards told the detective he needed to go back to work after the interview, the detective inquired about what time Edwards needed to be there. Later in the interview, when Edwards asked if he was going home, the detective responded, "Far as I know. We got to see what's going on, okay?" At that point in the interview, the detective's responses were true because Edwards had not yet made any incriminating statements. When Edwards later told the detective that he wanted to go home that day, the detective said, "I understand that. And I want you to be able to go back your home. I want to you to go back to your job, that is what we are here for."

We decline to adopt Edwards' view of the import of these statements because we do not read the statements as conditioning Edwards' ability to leave with making a confession. Instead, the statements simply acknowledge Edwards' concern and truthfully indicate that at the time of the statements, Edwards was not going to jail and would be permitted to leave. Further, the impermissible statements in *Valero* are distinguishable from this case because the officer in *Valero* misrepresented his ability to testify against Valero in court based upon the results of a polygraph. Here, while the detective acknowledged Edwards' request to leave, the detective did not misrepresent that Edwards would not be able to do so if he did not confess. Thus, the district court's finding that the detective did not make any false representations or promises is supported by substantial evidence.

Next, Edwards asserts the detective made promises he could not fulfill. Promises made by law enforcement officers without the authority to fulfill such promises may render a confession involuntary. *Valero*, 153 Idaho at 915, 285 P.3d at 1019. On the other hand, vague assurances of leniency, not connected to a specific sentence or benefit, do not necessarily render a confession involuntary. *Stone*, 154 Idaho at 954, 303 P.3d at 641. If an officer represents that he has the

5

authority to affect the charges brought against the defendant or promises leniency in return for the truth, a confession may be deemed involuntary. *Smith*, 162 Idaho at 885, 406 P.3d at 897. A mere representation of intent to inform a prosecutor of the defendant's cooperation, not connected to any promise of a specific benefit, is not an implied promise of leniency but is a significant factor in the totality analysis. *State v. Kysar*, 114 Idaho 457, 459, 757 P.2d 720, 722 (Ct. App. 1988).

Here, Edwards argues the detective "created the illusion that because Edwards was now working and had his life going on a 'correct track,' so long as he admitted that he had 'screwed up,' the authorities would not seek to 'derail' his improvements." Edwards compares these statements to the impermissible charging and sentencing decisions that the officer in *Valero* used. We do not read the transcript as the detective making any promises to Edwards that the detective could not fulfill. At best, the detective's statements offer a vague assurance of leniency, as contemplated in *Stone*, when he informed Edwards that the authorities would not seek to derail his improvements. Similarly, the detective telling Edwards that he would communicate Edwards' cooperation and honesty to the prosecutor, without any promise attached to it, was not improper coercive conduct. *Kysar*, 114 Idaho at 459, 757 P.2d at 722. Thus, the district court's finding that the detective did not make promises to Edwards that he could not fulfill is supported by substantial evidence.

Edwards further argues the detective impermissibly downplayed the seriousness of the allegations while interviewing Edwards. Law enforcement's minimization of the seriousness of the crime is alone insufficient to support a finding of coerciveness but is a factor under the totality analysis. *Valero*, 153 Idaho at 915, 285 P.3d at 1019. We do not view voluntariness through a filter of technicality but focus on the meaning of words that would reasonably be ascribed. *Kysar*, 114 Idaho at 459, 757 P.2d at 722. The fact that an officer downplayed the seriousness of a situation does not make a confession involuntary if the suspect was aware of the seriousness of the situation. *Smith*, 162 Idaho at 884, 406 P.3d at 896; *see State v. Wilson*, 126 Idaho 926, 929, 894 P.2d 159, 162 (Ct. App. 1995). In *Smith*, this Court held that while the officer in the case downplayed the seriousness at times, any perceived trivialization was counterbalanced by the officer talking about the court possibly imposing the maximum sentence if Smith did not accept responsibility for his actions.

To show the detective impermissibly downplayed the seriousness of the allegations, Edwards points to the detective's responses to Edwards explaining what happened between him

and K.B.  After Edwards told the detective that once he put his hands down K.B.'s pants, the detective stated, "not a problem," and that his actions were simply those of a "red blooded male." We do not agree with Edwards' interpretation of the detective's statements.  The statement was "We make mistakes.  We realize that we were stupid at the time.  I'm sure you're a young, red-blooded male, stuff was going, stuff was exciting."  It is clear that the detective was referring to Edwards putting his hands down K.B.'s pants, rather than the subsequent sexual touching.  Only after more questions by the detective, and more responses by Edwards, did Edwards confess to sexually touching K.B. and that K.B. had probably sexually touched him.

Edwards was aware of the seriousness of his actions both at the time of the act and during the interview.  For example, after making the incriminating statements, Edwards explained to the detective that at the time he did it, he thought, "I got to get out of here, I don't want to get myself in [ ] prison."  To relay this sentiment during the interview indicates that both at the time of the touching and during the interview, Edwards understood the seriousness of his actions. Additionally, the detective did not make statements minimizing the seriousness of Edward's illegal conduct, which was the sexual touching.  As a result, the district court's finding that the detective did not impermissibly downplay the seriousness of the allegations is supported by substantial evidence.

Edwards also argues his personal characteristics rendered his confession involuntary because he was especially vulnerable to manipulation and the detective's coercive tactics.  The accused's level of education or intelligence is a factor in the totality of circumstances to determine if a confession was given voluntarily.  *Moore*, 170 Idaho at 795, 516 P.3d at 1066.  In determining whether an individual is susceptible to police coercion, mental illness alone cannot make a statement involuntary.  *Smith*, 162 Idaho at 882, 406 P.3d at 894.  At the motion to suppress hearing, a family member of Edwards testified that Edwards' mother used alcohol and methamphetamine while pregnant.  The family member testified that Edwards has difficulty comprehending what others tell him to do, does not grasp concepts very well, is easily manipulated, and would be susceptible to being tricked by someone in law enforcement.

In this case, even if the family member's testimony was correct, the district court reviewed the video recording of the interview and did not find the detective took advantage of or manipulated the characteristics described to get Edwards to confess.  Additionally, in his brief, Edwards fails to cite any authority or explain how that authority rendered his confession involuntary in light of

7

the district court's factual findings. Thus, the district court's finding that Edwards' personal characteristics were not manipulated is supported by substantial evidence.

Edwards also contends the surrounding circumstances of the interview should weigh in favor of coercion because when Edwards had his *Miranda* rights read to him, he mistakenly believed the detective would be asking him questions about a different case, rather than the allegations against him. While it is true, at the onset of the interview, Edwards believed he was being questioned about a different case, before asking Edwards any questions, the detective corrected Edwards' misunderstanding and informed him that he was being questioned regarding allegations between him and K.B. Thus, any questions regarding Edwards' actions with K.B. were put to Edwards after the clarification. Edwards also fails to cite any authority for how his misunderstanding would weigh in favor of coercion, which generally results in a waiver of an argument on appeal. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). Therefore, the surrounding circumstances of Edwards' interview do not weigh in favor of coercion.

Finally, Edwards takes issue with the district court's finding that Edwards voluntarily went to the police station. Edwards argues he went to the police station and met the detective to discuss a different case and his misunderstanding continued until after he had been led into the interview room and advised of his *Miranda* rights. Edwards asserts, "Once the detective made it clear that Mr. Edwards' ability to return home and to his job was entirely dependent upon his cooperation with the detective, no reasonable person would believe they were free to leave." We do not find Edwards' argument persuasive because, as discussed above, any misunderstanding was cleared up early in the interview. As a result, the district court's finding that the detective did not condition Edwards' ability to return home on his cooperation, and that Edwards voluntarily met the detective at the police station, is supported by substantial evidence.

In sum, each of the factors that Edwards argues weigh in favor of showing his confession was involuntary were addressed and weighed by the district court. As to each factor, the district court found the factor did not demonstrate that the confession was involuntary. As such, under the totality of the circumstances, many of the factors are unchallenged and of the challenged factors, Edwards has failed to demonstrate they rendered his confession involuntary. Therefore, the district court did not err in denying Edwards' motion to suppress.

## IV.

## CONCLUSION

The district court did not err in determining that Edwards voluntarily confessed because the totality of the circumstances indicate that Edwards' will was not overcome or overborne, and the detective did not use any impermissible coercive tactics. The district court's order denying Edwards' motion to suppress and his judgment of conviction are affirmed.

Chief Judge GRATTON and Judge TRIBE **CONCUR**.